# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 570 - 2 | **DATE** | 7/9/2001 |
| **CASE TITLE** | USA vs. Maria Busillo | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant Busillo's motion for judgment of acquittal is granted in part with respect to counts 1,2, and 10. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **7** | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 1 0 2001 | |
| | Docketing to mail notices. | | date docketed | 160 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/9/2001 | |
| | | | date mailed notice | |
| rs | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 10 AM 8: 26 | rs | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 1 0 2001

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | |
| | ) | 99 CR 570 |
| JOHN SERPICO, MARIA BUSILLO, and | ) | |
| GILBERT CATALDO | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Defendants John Serpico, Maria Busillo, and Gilbert Cataldo, pursuant to Federal Rule of

Criminal Procedure 29(a), have moved this Court for a judgment of acquittal on the

Government's eleven count Indictment. For the reasons set forth below, this Court grants

Defendant Serpico's Motion for Judgment of Acquittal in part with respect to Counts One, Two,

Ten, and Eleven, grants Defendant Busillo's Motion for Judgment of Acquittal in part with

respect to Counts One, Two, and Ten, and denies Defendant Cataldo's Motion for Judgment of

Acquittal as to Counts Seven to Nine.

## BACKGROUND

During the relevant time period alleged in the Indictment, 1979 to 1991, Serpico and

Busillo held various influential positions with the Central States Joint Board ("CSJB") and

controlled the management of the unions' funds, including the selection of the financial

institutions in which the funds were deposited.[1] Cataldo is a long-time personal and business

---

[1]     The CSJB was comprised of several local labor organizations ("member locals")
as defined by 29 U.S.C. §§402(i) and (j) and employee organizations under 29 U.S.C. §1002(4).
The total membership of the member locals which comprised the CSJB numbered 20,000. The
CSJB provided administrative and management services to the member locals and supervised
business agents and organizers for the member locals, and managed the financial affairs of the
member locals. Together, the "CSJB entities" raised substantial sums of money for employee

associate of Serpico and was employed as a consultant on a construction project which was financed by CSJB.

## I. Schemes

The Indictment alleges that Defendants participated in three separate but related schemes to defraud the CSJB: (A) the loans-for-deposit scheme; (B) the hotel kickback scheme; and (C) the Wagner Road house scheme.

### A. The Loans-For-Deposits Scheme

The Indictment charges Serpico and Busillo with receiving personal and business loans from certain banks in exchange for depositing the unions' funds with those banks ("the Loans-for-Deposit Scheme"). From May 1979 and until December 1990, Serpico and Busillo allegedly defrauded the CSJB entities of money, property, and the right to their honest services, by soliciting and receiving from financial institutions at least $5,000,000 in personal and business loans on terms and conditions more favorable than those that the financial institutions ordinarily offered to other borrowers with similar financial qualifications.

The Government alleges that the banks extended those loans on terms which they would not have but for Serpico and Busillo wielding their influence with the CSJB entities causing them to deposit substantial sums of money with those institutions. For example, the indictment alleges that the banks: financed one-hundred percent of the purchase price of real estate or start-up business ventures; loaned money to cover the interest payments on existing loans; made unsecured loans; and made loans where the borrower could not establish a sufficient cash flow to

benefit plans. The CSJB established and maintained banking relationships for the local members. The CSJB also maintained its own funds, raised from fees paid by the member locals.

service the debt consistent with the banks' own lending policies. In return for these favorable loans, Serpico and Busillo allegedly deposited the unions' money with those banks.

**B.    The Hotel Kickback Scheme**

The indictment further alleges that Serpico and Cataldo defrauded the unions by hatching a scheme wherein Serpico used his influence over the unions' funds to finesse a kickback from developers of a hotel in Champaign, Illinois ("the Hotel Kickback Scheme"). Specifically, it is alleged that "Company A" entered into partnerships to construct a hotel in Champaign. One of the partnerships was known as 51 Associates Limited Partnership. Company A was responsible for obtaining financing for the construction of the building, but was unable to receive financing for the construction of the hotel without first securing a commitment for a mortgage loan that would guarantee repayment of the construction loan when the hotel was built.

The Government alleges that Serpico caused the unions to make a mortgage loan to the developers. Only after Serpico arranged for the mortgage loan to 51 Associates did a lender, Mid-City Bank, agree to make a construction loan to 51 Associates. The Indictment alleges that because Serpico provided the union funds to secure a mortgage loan for the hotel, Mid-City was willing to provide the construction loan to 51 Associates.

The Government alleges that in exchange for Serpico getting the loan from the CSJB, 51 Associates paid $330,850 to Cataldo's corporation, Taylor West and Company, for consulting services which Cataldo was hired to perform but in fact did not perform.

After the payments were deposited into Cataldo's account for Taylor West, Cataldo allegedly used some of the money to pay for business expenses for one of Cataldo and Serpico's business projects which was completely unrelated to the Champaign hotel. The indictment also

3

alleges that Cataldo converted over $100,000 of his hotel consultant fee to cash which he then gave to Serpico. Serpico then allegedly gave this cash to Busillo for use by her as a cash payment of $100,000 for her purchase of a house on Wagner Road in Glenview, Illinois.

## C.     The Wagner Road House Scheme

The indictment also charges Serpico and Busillo with bank fraud in connection with the purchase of the Wagner Road house ("the Wagner Road House Scheme"). The indictment alleges that in 1990, Serpico and Busillo made false statements and concealed information from Capitol Bank for the purpose of influencing the bank to provide an $800,000 loan to Busillo to purchase the house. Specifically, the indictment alleges that Serpico and Busillo falsely represented to Capitol that the full purchase price of the house was $800,000 when, in fact, it was $900,000. They allegedly concealed from Capitol the fact that Busillo paid the $100,000 difference in cash which was derived from the Hotel Kickback Scheme.

The indictment alleges that Serpico and Busillo's misrepresentation of the price and source of the $100,000 cash payment for the Wagner Road house deprived Capitol Bank of material information which would have assisted it in accurately assessing the risks associated with making the loan.

## II.     The Counts

The above three schemes are incorporated in the eleven count Indictment which charges Defendants with: (A) racketeering and racketeering conspiracy; (B) mail fraud; and (C) bank fraud.

### A.     Racketeering and Racketeering Conspiracy

Counts one and two of the indictment charge Serpico and Busillo with violations of 18

U.S.C. §§ 1962 and 1963 by engaging in racketeering and racketeering conspiracy. Count One, the racketeering charge, sets out 20 racketeering acts and alleges a pattern of racketeering activity that encompasses the allegations set out in Counts Three to Ten, mail fraud (18 U.S.C. § 1341), bank fraud (18 U.S.C. § 1344), and false statements to a financial institution (18 U.S.C. § 1014), as well as pension fund bribery (18 U.S.C. § 1954), money laundering (18 U.S.C. § 1957), and structuring currency transactions to avoid reporting requirements (18 U.S.C. § 5324(3)). Count two, the racketeering conspiracy charge, alleges that Serpico and Busillo conspired to violate the racketeering statute by agreeing that one of them would commit at least two acts of racketeering, including acts of mail fraud, pension fund bribery, and money laundering.

## B.    Mail Fraud

### 1.    Counts 3-6

The Loans-for-Deposit Scheme is contained in Counts Three through Six. These counts allege that Serpico and Busillo committed mail fraud by using their positions with the CSJB to arrange for personal and business loans on extremely favorable terms from financial institutions in exchange for depositing large sums of money belonging to the CSJB entities at those institutions in violation of section 1341.

### 2.    Counts 7-9

Counts Seven through Nine relate to the Hotel Kickback Scheme. These counts allege that Serpico and Cataldo violated sections 1341 and 1344 by arranging to have the CSJB entities to provide a speculative loan for the construction of a hotel in Champaign, Illinois. In exchange for the loan, the hotel developers paid Cataldo $330,850 for consulting work which he did not perform. Cataldo then allegedly "kicked" some of this money back to Serpico by using some of

it to pay for business expenses for a project in which Serpico was a partner and by converting some of the money to cash which was given to Serpico.

### C.    Bank Fraud and False Statements to a Bank

Counts Ten and Eleven relate to alleged misrepresentations that Serpico and Busillo made to Capitol Bank, the bank that financed the Wagner Road House Scheme.  Count Ten alleges that Serpico and Busillo committed bank fraud, in violation of section 1344, by concealing from Capitol Bank that they made an under-the-table payment of $100,000 to the seller with money derived from the Hotel Kick Back Scheme.  Count Eleven charges Serpico and Busillo with making false statements to Capitol Bank, in violation of section 1014, by representing that the price of the Wagner Road house was $800,000, when in fact the price paid was $900,000.

### ANALYSIS OF DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL

After the close of the Government's case, which took seven weeks, Defendants each filed motions for judgment of acquittal.  Defendants contend that this Court should acquit Defendants for the following reasons: (I) pursuant to Federal Rule of Criminal Procedure 29(a), the evidence is insufficient to sustain a conviction for the three schemes alleged in the Indictment; (II) the evidence offered at trial with respect to Count Ten is materially different from the allegations set forth in Count Ten of the Indictment, which constitutes an impermissible constructive amendment of Count Ten; and (III) the statute of limitations bars the racketeering counts.  The Court will address each of these contentions in turn.

### I.    Sufficiency of Evidence

Under Federal Rule of Criminal Procedure 29(a), a court may acquit a defendant on "one or more offenses charged in the indictment or information after the evidence on either side is

closed if the evidence is insufficient to sustain a conviction of such offense or offenses."[2] When

reviewing a motion for judgment of acquittal pursuant to Rule 29(c), the Seventh Circuit

mandates that the district court determine:

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendants] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

United States v. Reed, 875 F.2d 107, 111 (7th Cir.1989). In short, the court views all the

evidence in the government's favor and is absolutely barred from second-guessing the jury's

credibility determinations or findings of fact. Id. Instead, the court merely assesses the record to

determine if all the admissible evidence supports the defendants' adjudication of guilt beyond a

reasonable doubt. Id.

In reviewing the evidence, however, the court must remember that although "a conviction

may be based solely on reasonable inferences from circumstantial evidence, a conviction cannot

rest on mere speculation or conjecture." United States v. Pinckney, 85 F.3d 4, 7 (2d Cir. 1996).

Where the government seeks to prove guilt solely with circumstantial evidence, the court "must

---

[2]　　The Government has requested that this Court reserve ruling on Defendants' Rule 29(a) motions until after the jury returns a verdict. In determining when to rule on a Rule 29 motion, the court should "balance the defendant's interest in an immediate resolution of the motion against the interest of the government in proceeding to a verdict thereby preserving its right to appeal." Rule 29 Advisory Committee Comments. Balancing these factors, this Court finds that the balance tips in favor of deciding Defendants' Rule 29 motions before the case is submitted to the jury. As explained below, this Court finds that there is insufficient evidence to support a conviction of Serpico and Busillo on the charges of racketeering, bank fraud, and money laundering. Therefore, if these charges are submitted to the jury along with the remaining allegations, these charges will only serve to taint the jury's deliberations against Defendants. Therefore, the Court will rule on Defendants' Rule 29 motions before the case is submitted to the jury.

insure that the verdict does not rest solely upon the piling of inference upon inference." United States v. Moore, 115 F.3d 1348, 1364 (7th Cir. 1997). Moreover, where the evidence of a crime is "equally consistent with a theory of innocence as a theory of guilt, [the] evidence necessarily fails to establish guilt beyond a reasonable doubt." United States v. Harris, 942 F.2d 1125, 1129-30 (7th Cir. 1991). Consequently, when reviewing the evidence in ruling on a motion for judgement of acquittal, the court should grant the motion where the government's evidence "is so scant that the jury could only speculate as to the defendant's guilt, . . . and is such that a reasonable-minded jury must have a reasonable doubt as to the defendant's guilt." United States v. Miller, 761 F. Supp. 1368, 1376 (S.D. Ind. 1991), quoting United States v. Beck, 615 F.2d 441, 447-48 (7th Cir. 1980).

Here, Defendants contend that the Government has failed to present sufficient evidence for a reasonable jury to find Defendants guilty beyond a reasonable doubt of the three schemes alleged in the Indictment: (A) the loans-for-deposit scheme; (B) the hotel kickback scheme; and (C) the Wagner Road house scheme. The Court will discuss the sufficiency of evidence as to each of the three schemes.

## A.     The Loans-For-Deposits Scheme

The Loans-for-Deposit Scheme (Counts Three to Six) alleges that Serpico and Busillo violated the mail fraud statute (section 1341) by using their influence with the CSJB to get $5,000,000 in personal and business loans on terms more favorable than the banks generally offered to similar borrowers in exchange for depositing the unions' funds with the same lenders.

To prove a defendant guilty of mail fraud under section 1341, the government must show that the defendant: (1) participated in a scheme to defraud; and (2) used or caused the use of the

8

mails in furtherance of that scheme. <u>United States v. Barger</u>, 178 F.3d 844, 847 (7th Cir. 1999);

<u>United States v. Allied Asphalt Paving Co.</u>, 451 F. Supp. 804, 812 (N.D. Ill. 1978). Where the

scheme involves multiple defendants, the government must prove beyond a reasonable doubt that

each defendant: (1) was a party to the scheme; and (2) and specifically intended to defraud.

<u>Allied Asphalt Paving Co.</u>, 451 F. Supp. at 812. Thus, a defendant cannot be convicted of mail

fraud if the evidence does not show beyond a reasonable doubt that the defendant knew of the

scheme and intended to defraud. <u>Id.</u>

Serpico and Busillo contend that the Government has failed to prove them guilty beyond

a reasonable doubt because the government has failed to present sufficient evidence that they

intended to solicit the banks to give them favorable loans in exchange for union deposits.

Busillo contends that of the twelve loans from eight different banks, the Government has

only proved that some of the loans (the Marco Island, Queens Lane, and Wagner Road loans)

from Capitol Bank were favorable. Busillo, however, contends that the evidence is not sufficient

to prove her guilty beyond a reasonable doubt because there was not evidence that she knew that

any of the loans were favorable.

Additionally, Serpico and Busillo contend that this Court should acquit them on the Loan-

for-Deposit Scheme (Counts Three to Six) because the Government has failed to present

sufficient evidence that they intended to solicit the banks to give them favorable loans in

exchange for union deposits.

After reviewing the parties' submissions and the relevant parts of the record, this Court

finds that although the evidence for Loans-for-Deposit Scheme is somewhat tenuous, there is

sufficient direct and circumstantial evidence for a jury to reasonably conclude that Serpico and

9

Busillo intended to solicit the banks to give them favorable loans in exchange for union deposits. For example, the evidence shows that between 1978 ands 1990, Serpico and Busillo obtained 17 loans from eight different banks that received substantial union deposits close in time to the bank's decisions to make the loans. Moreover, the banks involved in this scheme were small community banks whose interest rates were lower than larger banks.

In the case of one loan, shortly after Capitol Bank approved a $1 million loan to Serpico, the CSJB moved the management of $12 million in assets to Capitol Bank despite the fact that Capitol had a very small trust department which did not have experience to handle large accounts. Before these assets were transferred to Capitol, the Amalgamated Bank, a large bank which handles the money of many unions, had handled the CSJB's assets for years without any complaints. Around this time, the Northern Trust, a highly respected bank with a large and experienced trust department, was attempting to solicit business from the CSJB.

Furthermore, while the intent of the banks is not attributable to Serpico and Busillo, officers at Capitol testified that the union deposits favorably influenced the bank's decisions to approve the loans and that Capital overlooked a number of problems with Serpico and Busillo's loan applications, including: inadequate cash flow, insufficient security, and the lack of end take-outs. According to Capitol, given the nature of the loans to Serpico and Busillo, these types of loans were generally only made to customers with substantial personal deposits, which Serpico and Busillo did not have with Capitol.

Moreover, the Government presented direct evidence that Serpico intended to solicit the banks to give them favorable loans in exchange for union deposits. In a discussion that Serpico had with Mr. Hahn, the former president of Capitol, about moving a personal mortgage to

10

Capitol from Midwest Bank, Serpico told Mr. Hahn that his unions' money at Midwest Bank did not need to be there if this personal loan was not with Midwest.

Consequently, this Court finds that the above pattern of activity, the bank's admission that they were influenced by the union deposits, and Serpico's statements to Hahn, provide sufficient evidence to permit a jury to reasonably conclude that Serpico and Busillo were knowing and willing participants in the Loans-for-Deposits Scheme. The Court notes that Serpico and Busillo have argued that the banks' intent and the intent of each Defendant cannot be attributed to the other Defendants. The Court agrees with this contention but feels that this concern can be remedied by properly instructing the jury as to what inferences they may make in their deliberations. Consequently, this Court denies Serpico and Busillo's motions for judgment of acquittal with respect to Counts Three to Six.

**B.      The Hotel Kickback Scheme**

The Indictment further alleges that Serpico and Cataldo violated sections 1341 and 1344 by arranging to have the CSJB entities provide a speculative loan for the construction of a hotel in Champaign, Illinois. In exchange for the loan, the hotel developers paid Cataldo $330,850 for consulting work which he allegedly did not perform. The Government contends that Cataldo "kicked back" some of the money he received for his consulting services to Serpico by: (1) converting over $100,000 of his consulting fee to cash and then giving the cash to Serpico; and (2) using part of the consulting fee to pay Serpico's share of expenses in a partnership which Cataldo and Serpico formed to build town homes in Cicero, Illinois ("the Cicero Partnership").

Testifying for the Government, Agent Schindler testified that Cataldo converted over $100,000 of his payments for his consulting services into cash. However, the agent also testified

11

that there was no evidence that Cataldo transferred this cash to Serpico or that Serpico transferred

this cash to Busillo for use in the purchase of the Wagner Road house. In fact, there was

absolutely no evidence as to what Cataldo did with this cash. The Government contends that the

fact that Busillo paid $100,000 cash for the Wagner Road house is evidence that Cataldo gave the

cash to Serpico and that Serpico then gave the cash to Busillo. The Government further contends

that Serpico's statement to Busillo not to mention the cash payment for the house is evidence of

the kickback.

This Court finds that the Government has failed to present sufficient evidence to prove

that any of the consulting fee which Cataldo converted to cash was "kicked back" to Serpico or

Busillo. To allow this question to go to the jury would invite the jury to make speculative

inferences not based on the evidence presented at trial.

The Government further alleges that Cataldo used part of his consulting fee to pay

Serpico's share of expenses in the Cicero Partnership. This partnership was a joint partnership

(50/50) between Serpico and Busillo. The evidence at trial showed that Cataldo used money

from his consulting fee to pay 100% of Serpico's costs in the Cicero Partnership. Serpico and

Cataldo contend that this was not a kickback but was simply the manner in which Serpico and

Cataldo conducted business. For example, in 1991, a year after the Cicero payment, Serpico paid

more than his share of expenses for a different partnership in which Serpico and Cataldo were

partners. The Court finds that this issue is a question of fact for the jury to determine and that

there is sufficient evidence for the jury to reasonably conclude that the payment of Serpico's

expenses in the Cicero Partnership with money from the consulting fee was a kick back.

Therefore, this Court denies Serpico and Cataldo's Motions for Judgment of Acquittal as to

Counts Seven to Nine.

## C.    The Wagner Road House Scheme

The Indictment also alleges that Serpico and Busillo made false statements and concealed information from Capitol Bank for the purpose of influencing the bank to provide an $800,000 loan to Busillo to purchase the Wagner Road house. This scheme is contained within Counts Ten and Eleven which charge Serpico and Busillo with violating sections 1344 and 1014. Because this Court finds that the evidence to prove these violations is different, the Court will separately examine each of these counts.

### 1.    Count Ten

As explained below, to prove Serpico and Busillo guilty beyond a reasonable doubt for bank fraud under section 1344, the Government must prove that the $100,000 cash payment on the purchase of the Wagner Road house was derived from the Hotel Kick Back Scheme; to do otherwise would constitute a constructive amendment of Count Ten. As explained above, the Government has failed to present sufficient evidence that Cataldo transferred cash derived from his consulting fee to Serpico or that Serpico transferred any cash derived from the Hotel Kickback Scheme to Busillo. Therefore, the Government has failed to present sufficient evidence to allow a jury to reasonably conclude that the $100,000 cash payment for the Wagner Road house was derived from the Hotel Kick Back Scheme, and thus, this Court must acquit Serpico and Busillo on Count Ten.[3]

---

[3] Because the Court must acquit Serpico and Busillo on Count Ten, the Court must also acquit them on Racketeering Acts 19 and 12. These acts charge Serpico and Busillo with money laundering (section 1957) for laundering $100,000 of the proceeds from the Hotel Kick Back Scheme in the Wagner Road home purchase. Therefore, because the Government has failed to show that the $100,000 went to the payment of the Wagner Road House, Serpico and

### 2. Count Eleven

Count eleven of the indictment charges that Serpico and Busillo's alleged misrepresentation to Capitol Bank about the purchase price of the house constituted a false statement to a bank in violation of 18 U.S.C. § 1014. Section 1014 provides that:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution or security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

As discussed in this Court's August 22, 2000 Memorandum and Order, denying Defendants' Motion to Dismiss the Indictment, section 1014 focuses on "any" statement made for the purpose of influencing in "any" way the action of a bank in "any" of the actions set forth in the statute. United States v. Krilich, 159 F.3d 1020, 1028 (7th Cir. 1998). It is unimportant for the court to speculate on what a bank's course of action would have been had it known the actual circumstances which the falsehoods concealed. The materiality of falsehood is not an element of the crime of knowingly making a false statement to a federally-insured bank under section 1014. United States v. Wells, 519 U.S. 482, 490 (1997); United States v. Swanquist, 161 F.3d 1064, 1075 (7th Cir. 1998); United States v. Pribble, 127 F.3d 583, 588 (7th Cir. 1998).

Here, Serpico and Busillo contend that there is insufficient evidence to show that they made false statements to Capitol Bank regarding the purchase price of the Wagner Road House. Busillo contends that the documents in Capitol's loan file were all executed after the loan was

Busillo cannot reasonably be found guilty of laundering this money.

made, and therefore, any misrepresentations in these documents could not have influenced

Capitol's decision to grant the Wagner Road house loan. Furthermore, Busillo notes that none of

the Capitol witnesses testified that they had any conversations with Busillo in connection with

this loan. Likewise, Serpico contends that the evidence shows that he did not sign any of the

loan or purchase documents and did not make any false statements regarding the purchase price.

The Government contends that the evidence shows that Busillo signed the purchase

contract which falsely listed the purchase price as $800,000. Internal bank documents show that

Capitol incorrectly believed that the purchase price was $800,000 and obtained a copy of the

false sales contract when Busillo requested the loan. When Busillo obtained the loan

disbursement, she signed a closing statement which also falsely stated the purchase price.

Moreover, when Busillo applied to Capitol to replace the $800,000 loan with a $320,000

mortgage, she falsely represented the purchase price of the home as $800,000. Consequently,

after reviewing the record, this Court finds that there is sufficient evidence for a jury to

reasonably conclude that Busillo violated section 1014 by falsely representing the purchase price

of the Wagner Road house. Consequently, this Court denies Busillo's Motion for Judgment of

Acquittal with respect to Count Eleven.

In contrast, a review of the evidence in this case shows that the Government has failed to

present sufficient evidence to prove that Serpico made a material false statement to Capitol in

connection with the purchase of the Wagner Road house. The Government's evidence consists

entirely of circumstantial evidence: (1) the fact Serpico accompanied Busillo throughout most of

the events leading up to the purchase; (2) Serpico's comment to Busillo in front of a real estate

agent not to mention the cash payment; and (3) the fact that Capitol received the purchase

contract the same day that Serpico first came to inquire about the loan to Busillo. Serpico, however, points out that Mr. Hahn testified that although the purchase contract for the Wagner Road house was delivered the day Serpico came to inquire about the loan, he could not recall whether Serpico brought the contract into the bank. Looking at this evidence in its entirety, this Court finds that there is insufficient evidence for a jury to reasonably conclude that Serpico violated section 1014 by falsely representing the purchase price of the Wagner Road house. To allow this issue to go to the jury would simply allow the jury to speculate by piling inference upon inference based upon tenuous circumstantial evidence. Consequently, this Court grants Serpico's Motion for Judgment of Acquittal with respect to Count Eleven.

In sum, this Court finds that the Government has failed to present sufficient evidence for a jury to reasonably find Serpico guilty on Counts Ten and Eleven or Busillo guilty on Count Ten. To allow these Counts to go to the jury would simply allow the jury to speculate by piling inference upon inference based upon circumstantial evidence. Consequently, this Court grants Serpico's Motion for Judgment of Acquittal with respect to Counts Ten and Eleven and grants Busillo's Motion for Judgment of Acquittal with respect to Count Ten.

## II. Constructive Amendment

Defendants contend that the Government is attempting to constructively amend Count Ten of the Indictment by now arguing that it does not need to prove that the $100,000 cash payment for the Wagner Road house was derived from the Hotel Loan Kickback scheme to prove Serpico and Busillo guilty of Count Ten.

The constructive amendment of a criminal indictment is precluded by the Fifth Amendment which mandates that a defendant can only be tried for a felony on the charges

16

approved by the grand jury. United States v. Leichtnam, 948 F.2d 370, 375 (7th Cir. 1991).

"Neither a prosecutor nor a judge can 'change the charging part of an indictment to suit [his or her] own notions of what ought to have been, or what the grand jury would probably have made had their attention been called to the suggested changes.'" Id., quoting Ex Parte Bain, 121 U.S. 1, 10 (1887).

A constructive amendment occurs when: (1) the evidence presented at trial goes "beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury," United States v. Baker, 227 F.3d 955, 960 (7th Cir. 2000); or (2) the proof at trial essentially "broadens" the "possible bases for conviction from that which appeared in the indictment." United States v. Pigee, 197 F.3d 879, 887 (7th Cir. 1999). Accord Leichtnam, 948 F.2d at 375. Moreover, "where an indictment makes a fact or a manner of committing an offense material to that offense, that fact or manner must be proven." Baker, 227 F.3d at 961.

Here, Serpico and Busillo contend that the Government cannot prove them guilty of Count Ten beyond a reasonable doubt because, as explained above, the evidence fails to show that the $100,000 cash payment for the Wagner Road house was derived from the Hotel Loan Kickback scheme. Defendants assert that the Government is attempting to constructively amend Count Ten by attempting to submit Count Ten to the jury on the grounds that the Government does not need to prove that the $100,000 cash payment for the Wagner Road house was derived from the Hotel Loan Kickback scheme.

Count Ten alleges that Serpico and Busillo violated section 1344 which provides that:

Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud

17

a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

Count Ten realleges Racketeering Act 15, which encompasses ¶¶ 99-105. Paragraph 99 realleges ¶¶ 68-96 (the paragraphs which allege the Hotel Kickback Scheme) and ¶ 111, which alleges that the $100,000 for the Wagner Road house purchase was derived from the Hotel Kickback Scheme. Likewise, paragraphs 104-106 all allege in some fashion that Serpico and Busillo defrauded Capitol Bank by failing to report that the $100,000 used in the purchase was derived from illegal activity – e.g., the Hotel Loan Kickback Scheme. In sum, 33 of the 37 paragraphs that make up Count Ten allege that the fraud perpetrated on Capitol by Serpico and Busillo was not simply the non-disclosure of the $100,000 but their failure to disclose that the source of the $100,000 was the Hotel Kickback Scheme.

Serpico and Busillo's contention that the Government is attempting to constructively amend Count Ten is supported by the position that the Government has taken throughout this case. For example, in contesting Defendants' motion to dismiss Count Ten before trial, the Government contended that the scheme to defraud Capitol occurred when Serpico and Busillo deliberately concealed from Capitol that Busillo paid $100,000 in cash for the Wagner Road house which was derived from the Hotel Loan Kickback Scheme. The Government asserted that Capitol would never have extended the loan to Busillo had it known that the undisclosed $100,000 was generated from illegal activity.

After examining Count Ten, the parties' submission, and the parts of the record that pertain to this issue, this Court finds that Count Ten specifically makes the non-disclosure of the illegal source of the $100,000 material to the offense of bank fraud, and therefore, the

Government must present evidence consistent with this theory. <u>Baker</u>, 227 F.3d at 961. By attempting to put Count Ten before the jury without proof that the $100,000 was derived from the Hotel Kickback Scheme or some other illegal activity would impermissibly broaden the "possible bases for conviction from that which appeared in the indictment." <u>Pigee</u>, 197 F.3d at 887. Therefore, this Court holds that because the Government, as explained above, has failed to present sufficient evidence linking the $100,000 cash payment to the Hotel Kickback Scheme or any other illegal activity, the Government cannot now constructively amend Count Ten to allow the jury to decide Count Ten based on the evidence presented at trial.

## III.    Statute of Limitations on the Racketeering Charges (Counts One and Two)

Counts One and Two of the Indictment charge Serpico and Busillo with racketeering and racketeering conspiracy. The parties agree that Counts One and Two depend on whether Count Ten (the bank fraud count) survives the motions for judgment of acquittal. This is because the ten-year statute of limitations under 18 U.S.C. § 3293 only applies to racketeering activity which constitutes bank fraud under 18 U.S.C. § 1344. If the racketeering activity does not encompass section 1344, the statute of limitations is five years. Therefore, because this Court has granted Serpico and Busillo's Motions for Judgment of Acquittal as to Count Ten (the only count which alleges a violation of section 1344), Serpico and Busillo must also be acquitted on Counts One and Two because the five year statute of limitations is applicable to Counts One and Two and precludes these racketeering counts.

## CONCLUSION

For the foregoing reasons, this Court grants Defendant Serpico's Motion for Judgment of Acquittal in part with respect to Counts One, Two, Ten, and Eleven, grants Defendant Busillo's Motion for Judgment of Acquittal in part with respect to Counts One, Two, and Ten, and denies Defendant Cataldo's Motion for Judgment of Acquittal as to Counts Seven to Nine. It is so ordered.

**ENTER**

*Blanche M. Manning*

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

**DATE:** JUL 0 9 2001